WHITE, J.,
delivered the opinion of the Court:
This is an action of debt brought by the Plaintiff to recover a penalty inflicted by an Act of Congress to insure the collection of the Revenue of the United States: which penalty, the same Act says, may under circumstances, *such as exist in this case, be recovered in a State Court; and the question submitted to the General Court is substantially this: Could Congress Constitutionally give to a State Court, jurisdiction over this case, or can such Court be authorised by an Act of Congress to take cognizance thereof ?
The very statement of the question points out its extreme delicacy, and great importance. It involves the great Constitutional rights and powers of the General Government, as well as the rights, Sovereignty, and Independence of the respective State Governments. It calls upon this Court, to mark the limits which separate them from each other, and to make a decision, which may possibly put at issue, upon a great Constitutional point, the Legislature of the United States, and the Supreme Criminal Tribunal of one of the States.
Such a question, involving such consequences, ought to be approached with the utmost circumspection, with the most cool, dispassionate, and impartial investigation, and with a fixed determination, to render such judgment only, as shall be the result of solemn conviction. The Court has not been unmindful of these things : it has approached the subject with those feelings, and with that determination. It has bestowed its best consideration, its deepest reflection upon it: and after viewing it, in every point of light in which it has been placed by others, or in which the Court has been able to place it, has made up an opinion in which all the Judges present concur, and which it has directed me to pronounce.
But, before that is done, it will be necessary to lay down, and explain, certain principles upon which it is founded. First, it is believed that the Judicial power of any State, or Nation, forms an important part of its Sovereignty, and consists in a right to expound its Laws, to apply them to the various transactions of human affairs as they arise, and to superintend and enforce their execution. And that whosoever is authorised to perform these functions to any extent, has, of necessity, to the same extent, the Judicial power of that State or Nation which authorised him to do so. Secondly, that the Judiciary of one separate and distinct Sovereignty cannot of itself assume, nor can another separate and distinct Sovereignty either authorise, or coerce it to exercise the Judicial powers *126 of such other separate and distinct Sovereignty.
*It is indeed true, that the interests of commerce, and the mutual advantages derived to all Nations, by their respectively protecting the rights of property, to the citizens and subjects of each other, whilst residing or trading in their respective territories, have induced civilized Nations generally to permit their Courts to sustain suits brought upon contracts made in foreign countries, and to enforce their execution, according to their true intent and meaning : and, in order to ascertain that, our Courts do permit the Laws of the country where the contract was made, to be proved to the jury, or the Court of Chancery, as the case may be, as facts entering essentially into the substance of the contract. But in doing all this, they do not act by the command, nor under the authority, of the Sovereign of that Nation. Nor are they exercising any portion of its Judicial power. They are only expounding, applying and superintending the execution of the Law of their own State, which authorises that mode of proceeding. And upon the same principle, there can be no doubt but that any contract made, or any civil right arising, under the Laws of the United States, would be enforced in our State Courts, with this additional-advantage, that those Laws need not be proved, but would, under the authority of the Constitution, be judicially known to the Judges.
But, though there are the best reasons for permitting our Courts to sustain suits of this description, there is no good reason why one Nation should authorise its Judiciary to carry the Penal Laws of another into execution, and it is believed that no Nation has ever done so, and we have already seen that there is no principle of Universal Law which authorises one Sovereign to empower, or direct the Judiciary of another to do so : such a right can be acquired by compact only : and we shall presently see whether Congress have so acquired it. Without such compact, a fugitive from justice cannot, as a matter of right, be even demanded to be delivered up to the Tribunals of the Nation whose Laws he has violated, much less can he be tried and punished by a foreign tribunal for violating them.
If such a system shall be once adopted, it will introduce a strange kind of Mosaick work into the Judiciary system of Nations. Here, a Code, committing to the flames an Italian for denying the Pope’s infallibility : there, the stern Pathers of the Holy Inquisition impaling a poor Turk, because he denies that Mahomet is the Prophet of God : The '^Judges of Republican Virginia pillorying an Englishman for libelling Royalty, and the Court of King’s Bench inflicting the same punishment upon an American for libelling the Government of the United States for the late declaration of war.
Thirdly, that the Government of the United States, although it by no means possesses the entire Sovereignty of this vast Empire, (the great residuum thereof still remaining with the States respectively,) is nevertheless, as to all the purposes 'for which it was created, and as to all the powers vested therein, unless where it is otherwise provided by the Constitution, completely Sovereign. And that, its Sovereignty is as entirely separate and distinct from the Sovereignty of the respective States, as the Sovereignty of one of those States is separate and distinct from the other. So that, (unless as before excepted,) it cannot exercise the powers which belong to the State Governments, nor can any State Government exercise the powers which belong to it: and that there is no one thing to which this principle applies with more strength than to the Revenue of the United States, and things belonging thereto. It being notorious, that a desire to give Congress a complete and entire control over that subject, was the moving principle which called the present Government into existence.
It is admitted, however, that there are some exceptions in the Constitution to this last rule ; they are such, however, as prove the rule itself. Thus by the second section of the third Article of the Constitution, among other things, it is declared that the Judicial power of the United States shall extend “to controversies between citizens of different States; between citizens of the same States, claiming lands under the grants of different States.” These powers, in the nature of things, belonged to the State Sov-ereignties, and they were at the adoption of the Constitution, in complete possession of them. Nor could the Courts of the United States, merely as such, by any principle of construction, have claimed them, but there were reasons at that time deemed sufficient to justify the extension of the Judicial power of the United States, and it was extended to them, without, however, taking away the jurisdiction of the State Courts. So that, as respects those matters, the State Courts, and the Courts of the United States have concurrent jurisdiction by compact.
*These things being premised, I return to the question : Can Congress, by any Act which it can pass, authorise the State Courts to exercise, or vest in them, any portion of the Judicial power of the United States ? more especially that portion of it, which is employed in enforcing its Penal Laws ? I shall not stop to prove that the Act in question is, as it respects this case, a Penal Law, or that to enforce the payment of its penalties, in anyway or form whatever, would be to explain, apply, and superintend the execution of it. These are self-evident propositions, which would only be obscured by any attempt to elucidate them.
Nor shall I waste much time in considering, whether our Courts can resist an Unconstitutional Law. That question, as respects our State Laws, has long since been settled in Virginia, and the decisions of her Courts have been acquiesced in by the General Assembly, with that wisdom, and magnanimity which belongs to it. The argument is much stronger as respects the Laws of Congress, the Legislature of a separate and distinct Sovereignty, by whose Laws we are not *127 bound, unless to use the very words of the Constitution, they are “made in pursuance thereof.” Were it otherwise ; were the State Courts obliged to execute every Caw which Congress might pass, without enquiring whether it was, or was not, made in pursuance of the Constitution, it is most manifest that the justly dreaded work of consolidation, would not only be begun, but that in principle it would be completed : and that State Sovereignty, and State Independence , would soon cease to exist.
We have seen already that the Government of the United States is, as to the purposes for which it was created, a separate and distinct Sovereignty, having rights, powers, and duties, which it is bound to exercise, and discharge itself, and which it cannot communicate to the States over which it presides, and with which they cannot intermeddle, and that the Judicial power forms a portion, and a most important portion of its Sovereignty. We have seen that there is nothing in Universal Raw, or the usage of Nations, which will authorise one Sovereignty to invest its Judicial power, or any part of it, in the Courts of another, or direct them to execute it, more especially that portion of it, which respects its Penal Code.
If then Congress has a right to vest that, or any other portion of the Judicial power of the United States, in the *State Courts, it must be in virtue of some compact. But, there is no other instrument from which such a compact can be inferred, but the Constitution of the United States. Get us then see where it has deposited the Judicial power of the General Government; for, where it has placed it, there it must remain.
That instrument does not take the least notice of the State Courts, as respects this subject. But it declares, that “the Judicial power of the United States shall be vested in one Supreme Court, and in such Inferior Courts as Congress may, from time to time, ordain and establish.” (b) And by another clause, power is given to Congress “to constitute tribunals inferior to the Supreme Court.” (c)
This Judicial power, then, the whole of it, without any exception, is given to this Supreme Court, and those Inferior Courts, to be ordained and established by Congress. It has never yet been contended that Congress can compel, or authorise, the State Courts, or any of them, to perform the functions of this Supreme Court. By what kind of reasoning, then, can it support a claim to exercise such a power with respect to the functions of those Inferior Courts ? Did Congress ordain and establish the State Courts ? Did it decree their existence ? Did it appoint their Judges ? Did it institute, did it settle, did it constitute them ? Most certainly it has done none of those things. It found them already ordained and established, and finding them so ordained and established, it has, by its Law, directed them to exercise this portion of the Judicial power of the United States.
But, the Judges of these Inferior Courts are to have offices which they are to hold during good behaviour. Now, I take it for granted, that the man who holds an office, is an officer, and an officer, too, of that Government whose business it is the duty of his office to perform. And by the Constitution, “all officers of the United States are to be commissioned by the President,” (d) which is not the case with the State Judges.
But, who does the Constitution intend shall decide on the good behaviour of the Judges of those Inferior Courts? Most unquestionably the Senate of the United States, upon ^impeachment of the House of Representatives. So great an absurdity cannot be supposed, as that the Constitution intended to put the Judicial power of the United States into the hands of Judges, in no way responsible to its Government. Yet no man can pretend that the State Judges can be impeached, and tried by that Government.
Besides, the Constitution of the United States does not provide that the State Judges shall hold their offices during good behav-iour. Congress cannot direct that it shall be so, by Law, and in fact some of them are elected for a limited period, and others may be removed by a vote of their State Legislatures : so that if a Law of Congress should be very unpopular in one of those States, the Judges could not execute it, but at the risk of their commissions. Moreover, the Judges of the State Courts are called upon, by this Act, to exercise Judicial power which they hold at the will of Congress, and which may be taken from them by the very breath which gave it, and which, it is almost certain, will be taken from them, whenever by a firm and independent exercise of their own judgments, they shall much offend that Honorable Body. So that, under this system, neither the People, nor the Government of the United States would have that security for the uprightness of their Judges which the Constitution contemplates.
But, the Judges of these Inferior Courts are also to receive, for their services, a compensation, which shall not be diminished during their continuance in office, not during the existence of a particular Law, calling for particular services.
Prom whom are they to receive that compensation ? Certainly from the General Government, to which those services are to be rendered. But do the State Judges receive, or are they to receive, any compensation for those services to be rendered to the United States ? Every body knows they do not. And we know that if any Judge of this State were to accept of either commission, or compensation, from the General Government, he would by that act vacate his office.
But it is said, that the State Courts do take cognizance of suits brought to enforce contracts made in foreign countries, and that they will take notice of those foreign Laws under the faith of which, such contracts were made, and enforce them agreeably thereto, and that this suit sounds in con *128 tract. But, how does it sound in contract ? Has the ^Defendant contracted to pay the amount of this penalty to the Plaintiff ? No, it is answered, it is not precisely so; but it is understood to be a principle of Universal haw, that every citizen and subject has entered into an implied contract that he will obey the Raws of his country : that the haws of his country subject the Defendant to the payment of this penalty, that this suit is founded on that contract, and the State Court has for that reason jurisdiction over it. Indeed ! Before we yield our assent, let us see how far this reasoning' will carry us. It is sometimes said that an argument which necessarily proves too much, proves nothing. By this same implied contract, every citizen and subject of every Government has agreed to submit his head to the block, or his neck to the cord, whenever the Daws of his country require him to do so. If, therefore, this implied contract will give us jurisdiction over this Penal Law, and justify us in enforcing its sanction, the same principle will give u's jurisdiction over the entire Penal Code of every Nation upon earth, which no man will pretend to say we have.
Upon the whole, however painfulit may be, and actually it is to us all, to be brought by a sense of duty into conflict with the opinions and Acts of the Legislature of the United States, for which we entertain the highest respect, and the Constitutinal Laws of which we feel ourselves bound to obey, and to execute with cheerfulness, when their execution devolves upon us, yet we cannot resist the conviction that this Law is, in this respect, Unconstitutional.
It is the unanimous opinion of this Court, that to assume jurisdiction over this case, would be to exercise a portion of the Judicial power of the United States, which by the Constitution is clearly and distinctly deposited in other hands, and that by doing so, we should prostrate that very instrument which we have taken a solemn oath to support.
The judgment was entered in these words :
“It is the unanimous opinion of the Court, that the State Courts have no right to exercise the Judicial power of the United States, the Constitution having deposited it in other hands, and that to take cognizance of the matter declared for in this case would be to exercise that power. It is therefore decided, that the Law upon the demurrer in the record of the said Case contained, is for the Defendant : which is ordered to be certified.”

 Const. TJ. S. Art. 8, § 1.

 lb. Art. 1, § 8, Clause 9.

 lb. Art. 2, § 3.